CONTINUATION OF CRIMINAL COMPLAINT

1. I, Theodore Westra, am employed by the Kalamazoo Department of Public Safety (KDPS) and currently assigned as a Drug Enforcement Administration (DEA) Task Force Officer. I have been a police officer since November 1998, and I have been involved (full time) in the investigation of narcotics trafficking since February 2004. I was appointed a DEA Task Force Officer in December 2008. I have received narcotics-trafficking training, and I have participated in more than 1,000 investigations relating to narcotics trafficking. I am empowered by law to conduct investigations of and make arrests for certain offenses enumerated in Titles 18 and 21 of the United States Code.

2. The information contained in this complaint is based upon my personal knowledge and participation in the investigation described below, as well as information provided to me by other law enforcement officers who have personally participated in the investigation. I have not set forth all of the information known to me or known to other law enforcement officers concerning this matter.

3. This complaint is also presented to establish probable cause that on or about March 30, 2012, in Kalamazoo County, in the Western District of Michigan, MELVIN PIERRE WARD, DERRICK C. DAVIS, EUGENE MANFIELD WILSON, and MARIO LAVELLE BROWN (1) conspired to possess with the intent to distribute and to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a) and 841(b)(1)(B)(ii)(II) and (2) knowingly and intentionally possessed with intent to distribute 500 grams or more of a mixture or

substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a) and 841(b)(1)(B)(ii)(II).

4. On March 30, 2012, Kalamazoo Valley Enforcement Team (KVET) investigators executed a search warrant at 2517 Carleton Avenue, in the Township of Kalamazoo, Kalamazoo County, Michigan. The search warrant was based on investigators' observations of a purchase of cocaine from WARD at that residence on March 29, 2012.

5. Prior to the search warrant, investigators identified WARD as the resident of 2517 Carleton Avenue.

6. Investigators arrived at the residence at approximately 4:30 p.m. to execute the warrant. Upon approaching the home, investigators observed the smell of marijuana and heard what appeared to be several people inside the home. Investigators knocked on the door and a person peeked through the blinds. Investigators announced "Police! Search Warrant!" After the announcement, investigators heard commotion in the home consistent with people running around. No one answered the door and investigators forced entry into the home.

7. Investigators found several people inside the home, including DAVIS, WILSON, and BROWN. WARD attempted to flee the home and was apprehended immediately. Others located in the home included Charles Motton, James Berry, Shane Weathersby, and Derek Gibson.

8. Investigators observed DAVIS and WILSON flee into a southeast bedroom in the home. Investigators chased them into the room and observed WILSON dive into a closet with double sliding doors. One of the doors was open and the other

closed. Investigators immediately secured DAVIS in the room and ordered WILSON out of the closet. WILSON was hidden from view behind the closed door and refused to come out the closet. Investigators heard WILSON rustling around inside the closet. WILSON eventually came out of the closet. Investigators located $240 in United States currency on WILSON and $254 in United States currency on DAVIS. DAVIS also had a red utility knife hanging from his belt. Investigators discovered a white substance on the knife that field-tested positive for the presence of cocaine. Investigators located a bag of a white powdery substance in the closet. Kalamazoo Department of Public Safety Forensic Laboratory (KDPS Lab) determined this bag contained 14.01 grams of cocaine.

9.   Investigators observed BROWN in a southwest bedroom. Investigators secured BROWN and found a green leafy substance in one of his pants pockets and $1,622.00 in United States currency in the other pants pocket. Investigators searched the southwest bedroom and located a bag containing United States currency. The bag of cash was sitting on top of a pair of shoes which were sitting on a cardboard shoebox. Next to the bag of cash was another bag containing bags of a white powdery substance. KDPS Lab determined that these bags contained 183.58 grams of cocaine. The shoebox on which the cash was sitting was for a pair of shoes that BROWN was wearing on his feet.

10.   Investigators discovered a bag of a white powdery substance under a bed in the north bedroom of the home. KDPS Lab determined that this bag contained 42.03 grams of cocaine. On the bed, investigators located a jacket containing a large amount of United States currency. This currency together with the currency found near the shoes in the southwest bedroom totaled $8,235.00.

11. Investigators found two bags of white substance in a kitchen cabinet. KDPS Lab determined that these bags contained 208.71 and 145.44 grams of cocaine, respectively. Investigators also found a box of baking soda on the kitchen counter near a digital scale and Pyrex cooking dish both containing a white residue. Investigators also observed a pot on the stove with water in it and pot lid nearby that contained a white residue. Based on my training and experience, I know that the pot with water and the baking soda are items that drug dealers use to convert powder cocaine into crack cocaine.

12. Investigators utilized a K-9 dog to walk around vehicles located outside the residence. The K-9 gave a positive alert for narcotics outside the van. Investigators did not find narcotics in the van, but did located what appears to be a hidden compartment in the van and are still working to get the compartment open.

13. The total amount of cocaine seized from the residence is 593.77 grams.

14. Prior to the search warrant, investigators were informed that WARD would be receiving cocaine from Chicago, Illinois. The timing of the shipment was not known, only that it would occur in the next couple of days. DAVIS, WILSON, and BROWN are all from Chicago.

15. DAVIS, WILSON, and BROWN gave post-*Miranda* statements indicating they were in town from Chicago. DAVIS stated that he was in Kalamazoo because his friend BROWN had asked him to follow him there. DAVIS stated that BROWN drove a rental car to Kalamazoo and he needed a ride back to Chicago, so DAVIS followed him in his van (the same van with the hidden compartment). DAVIS stated they had only been at the house for about twenty minutes and were planning to turn around and head back to Chicago almost immediately. DAVIS stated he came from Chicago alone in his

van. DAVIS claimed that he did not know WILSON, although he stated he has seen him in Chicago before. As noted below, WILSON refers to DAVIS by a nickname and WILSON claims he rode to Kalamazoo with DAVIS.

16. WILSON stated he came to Kalamazoo so that BROWN could drop off a rental car. WILSON stated he did not ride with BROWN, but that he rode with "Lil' D", referring to DAVIS, in his van. WILSON stated they arrived in Kalamazoo today. WILSON stated that he had previously spent time in prison for selling drugs, but that he did not know anything about the drugs in the house on this occasion.

17. BROWN stated that he came from Chicago to return a rental car. BROWN stated that he had sold his car to WARD's girlfriend on a previous trip to Kalamazoo and that she rented a car for him so he could get back to Chicago. BROWN stated he had been at the residence for about forty minutes and that DAVIS followed him here in his van. BROWN stated he has known WARD for twenty years. BROWN stated WARD is from Chicago and that he knows WARD has been selling cocaine in Kalamazoo ever since he moved to Kalamazoo approximately ten years ago. BROWN stated that he had been "hit" for selling cocaine in Chicago a few years ago, but that he had nothing to do with the drugs that were found in the residence, other than the marijuana found in his pocket.

18. Based upon the foregoing information, I believe that there is probable cause to charge WARD, DAVIS, WILSON, and BROWN with (1) conspiracy to possess with the intent to distribute and to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a) and 841(b)(1)(B)(ii)(II)

and (2) possession with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a) and 841(b)(1)(B)(ii)(II).