1

1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE WESTERN DISTRICT OF MICHIGAN

3                   SOUTHERN DIVISION

4

5   UNITED STATES OF AMERICA,

6          Plaintiff,

7    v.                                    CASE NO:  1:12-CR-84

8   MELVIN PIERRE WARD,

9          Defendant.

10   _____/

11                    * * * *

12            CHANGE OF PLEA HEARING

13                    * * * *

14

15   BEFORE:  THE HONORABLE JOSEPH G. SCOVILLE
             United States Magistrate Judge
16           Grand Rapids, Michigan
             October 19, 2012
17
     APPEARANCES:
18
     APPEARING ON BEHALF OF THE PLAINTIFF:
19
         SEAN C. MALTBIE
20       HEATH M. LYNCH
         Assistant United States Attorney
21       P.O. Box 208
         Grand Rapids, Michigan  49501-0208
22
     APPEARING ON BEHALF OF THE DEFENDANT:
23
         PETER ALAN VANGELDEREN
24       CHARLES E. CHAMBERLAIN, JR.
         Willey & Chamberlain
25       40 Pearl Street, N.W. 940 Trust Building
         Grand Rapids, Michigan  49508

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

2

1        Grand Rapids, Michigan

2        October 19, 2012

3        at approximately 9:07 a.m.

4                PROCEEDINGS

5        THE COURT:  1:12-CR-84; United States of America vs.

6    Melvin Pierre Ward.

7        Defendant appears in court with counsel, Attorneys

8    Charles Chamberlain and Peter VanGelderen.  Mr. Maltbie

9    and Mr. Lynch appear on behalf of the government.  Four

10   lawyers for a guilty plea.  This is a new record.

11       All right.  Mr. Chamberlain, who is going to be

12   handling the guilty plea, you or Mr. VanGelderen?

13       MR. CHAMBERLAIN:  Mr. VanGelderen, your Honor.

14       THE COURT:  All right.  Thank you.

15       Mr. VanGelderen, good morning.  I understand that

16   your client is here to enter a guilty plea to Count One

17   pursuant to a written plea agreement; is that correct?

18       MR. VANGELDEREN:  Yes, that is correct, your Honor.

19       THE COURT:  Mr. Ward, as you know, you're in federal

20   court because the government is bringing two criminal

21   charges against you.  Those charges are set forth in the

22   Superceding Indictment.  Have you read that?

23       THE DEFENDANT:  Yes, your Honor.

24       THE COURT:  And spoken to your attorneys about it?

25       THE DEFENDANT:  Yes.

1      THE COURT:  Now, I'm told that you decided to plead

2  guilty to Count One pursuant to a plea agreement; is that

3  correct?

4      THE DEFENDANT:  Yes, your Honor.

5      THE COURT:  You should understand that no one can be

6  forced to plead guilty to any criminal charge.  You have

7  the right to a trial by jury on both these charges if

8  that's what you want.

9      THE DEFENDANT:  Yes, your Honor.

10      THE COURT:  By the same token, if you wish to plead

11  guilty, that's your right as well, as long as you

12  understand what you're doing, and you're acting of your

13  own free will.  So to make sure of that, I'm going to have

14  to ask you some questions, and the clerk will now give you

15  an oath to respond truthfully.

16      COURT CLERK:  Will you stand and raise your right

17  hand, please.

18          MELVIN PIERRE WARD - DEFENDANT - SWORN

19      THE COURT:  All right.  Count One charges that from

20  some date in March of 2010 to about March 30th, of 2012,

21  in Kalamazoo County, that you and one or more of the other

22  co-defendants named here knowingly and unlawfully combined

23  and conspired with each other, and with other persons, to

24  possess with intent to distribute, and to distribute 500

25  grams or more of a mixture or substance containing a

4

1    detectable amount of cocaine, a Schedule II controlled

2    substance.  Do you understand the nature of that charge?

3        THE DEFENDANT:  Yes, your Honor.

4        THE COURT:  Generally if a person is convicted of

5    this offense, the defendant faces a mandatory minimum of

6    five years in prison, maximum of 40 years in prison.  But

7    in this case, the government has filed an Information

8    informing the Court of a previous drug felony conviction.

9    And if the Court finds that you do have a previous drug

10    felony conviction, and in fact, you're admitting in this

11    proceeding that you do, 2007 Van Buren County conviction,

12    then the mandatory minimum for conviction of this offense

13    goes up to ten years, and the maximum to life.

14        In addition, the Court must place you on at least

15    eight years of supervised release, which is like parole.

16    Eight years is the minimum, the maximum is life on

17    supervision.

18        The maximum fine is $8 million, and there's a

19    mandatory $100 special assessment.

20        Again, these enhanced penalties arising from the fact

21    of a previous felony drug conviction.  Do you understand

22    the penalties you face if you plead guilty?

23        THE DEFENDANT:  Yes, your Honor.

24        THE COURT:  Do you have a question about that?

25        THE DEFENDANT:  No, sir.

5

1      THE COURT:  All right.  Now, before we go any further

2  in this proceeding, you should understand that this case

3  has been assigned to Judge Paul Maloney, who is a federal

4  district judge appointed by the president for a lifetime

5  term.  You have the absolute right to have your guilty

6  plea proceeding take place before Judge Maloney.

7      As a magistrate judge of this court, I also have the

8  authority to take your plea with your consent.  If you do

9  consent to this procedure, then I would ask you the

10  questions required by law, and if I find that you're

11  acting of your own free will and that you know what you're

12  doing, I would recommend to Judge Maloney that he accept

13  the plea.  It's going to remain up to him, however, to

14  accept or reject the plea, accept or reject the plea

15  agreement, and impose sentence.

16      As I said, you have the absolute right to tell me you

17  would rather have Judge Maloney do this or you can agree

18  to have me do it, that's up to you.  Do you understand

19  that?

20      THE DEFENDANT:  Yes, sir.

21      THE COURT:  And Mr. VanGelderen, have you also

22  explained this to your client?

23      MR. VANGELDEREN:  I have, your Honor.

24      THE COURT:  And does he wish to proceed before Judge

25  Maloney or before me?

6

1      MR. VANGELDEREN:  Before you, your Honor.

2      THE COURT:  Is that correct, Mr. Ward?

3      THE DEFENDANT:  Yes, your Honor.

4      THE COURT:  And do you make that decision of your own

5  free will?

6      THE DEFENDANT:  Yes, your Honor.

7      THE COURT:  Is that your signature on the consent

8  form on the screen there?

9      THE DEFENDANT:  Yes, your Honor.

10     THE COURT:  I find the defendant has knowingly and

11  voluntarily consented, and we will proceed.

12      I want to go back to Count One to make absolutely

13  sure you understand the nature of this charge.

14      You're charged under a federal law that makes it a

15  crime for two or more people to conspire to violate the

16  federal drug laws.  Now, a conspiracy is just an agreement

17  between two people to do something illegal.  You can't

18  conspire with yourself, you need two people to conspire.

19  So in order to convict you of this offense, the government

20  would have to prove certain things, which are called the

21  elements of the offense.  They have to prove these things

22  beyond a reasonable doubt:

23      First of all, they would have to prove that two or

24  more people made an agreement, and that the object of the

25  agreement was to possess with intent to distribute and to

7

1    distribute cocaine.

2        Second, the government would have to prove that you

3    knowingly entered into this agreement.  It wasn't a

4    mistake, you weren't tricked, but you understood that you

5    were agreeing with other people to violate the drug laws.

6    And you did this of your own free will, and that you

7    entered the conspiracy with the intent to further it, to

8    help it.

9        Next, the government would have to prove that the

10   object of this conspiracy was indeed to distribute and

11   possess with the intent to distribute cocaine, not some

12   other drug.  And very importantly in federal court, the

13   government would have to prove that it was within your

14   reasonable contemplation that there was at least 500 grams

15   of a mixture or substance containing cocaine involved

16   here.  That you knew or had reason to know.  You had

17   reason to understand that that quantity of drugs would be

18   involved over the lifetime of this conspiracy.  Do you

19   understand all of those things?

20       THE DEFENDANT:  Yes, your Honor.

21       THE COURT:  And as I said, the government has the

22   burden of proving each of these things beyond a reasonable

23   doubt.  That there was an agreement between two or more

24   people, that you knowingly entered into this agreement,

25   that the object of the agreement was to distribute and to

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

8

1    possess with intent to distribute the drug cocaine, and

2    that at least 500 grams of cocaine was in your reasonable

3    contemplation.

4        If the government were unable to prove any one of

5    those things, then you would be entitled to be acquitted

6    of this offense.  Do you understand that?

7        THE DEFENDANT:  Yes, your Honor.

8        THE COURT:  But by pleading guilty, you relieve the

9    government of its burden of proof, because you admit that

10   you're guilty of this offense.  Do you understand that as

11   well?

12       THE DEFENDANT:  Yes, your Honor.

13       THE COURT:  Also by pleading guilty, you give up most

14   of the defenses that you might have to a charge like

15   this.  For example, many times in a drug case, the

16   defendant believes that officers found the drugs through

17   an illegal search or seizure.  If the Court agreed with

18   that, then the Court might be required to suppress the

19   evidence of the drugs that were illegally seized at the

20   time of trial.  But by pleading guilty, you give up your

21   ability to raise that sort of defense to this

22   prosecution.  Do you understand that as well?

23       THE DEFENDANT:  Yes, your Honor.

24       THE COURT:  Now, in addition to make you subject to

25   the enhanced penalties that we talked about, the

9

1    government would have to show that you were previously

2    convicted of a felony drug offense, which means an offense

3    that is punishable by imprisonment for more than one year

4    under state law, and that the law that you broke

5    prohibited a restricted conduct relating to narcotic

6    drugs, marijuana, or other controlled substances.  In this

7    particular case, the government is contending, and would

8    have to show to the Court, that you were convicted in 2007

9    of a felony, for possessing cocaine in Van Buren County,

10   Michigan.  Do you understand that as well?

11        THE DEFENDANT:  Yes, your Honor.

12        THE COURT:  Now, if the government can show that,

13   then as I said, the mandatory minimum penalty you face

14   goes up to ten years here, ten years in prison, with a

15   maximum of life imprisonment.

16        Right now nobody knows what your sentence will be.

17   Judge Maloney will decide that at the time of sentencing.

18   But for today's purposes, you should understand that the

19   Court's going to sentence you to at least ten years in

20   prison and can sentence you to any greater time.  Do you

21   understand that?

22        THE DEFENDANT:  Yes, your Honor.

23        THE COURT:  There is a bear possibility that we will

24   talk about in a little while, that the Court might be

25   asked to release the mandatory minimum here, but you

10

1    should not be counting on that at all in making your

2    decision to plead guilty.  In other words, you should

3    assume that ten years will be the very least time that you

4    are going to be receiving at the time of sentencing.  Do

5    you understand that?

6        THE DEFENDANT:  Yes, your Honor.

7        THE COURT:  The Court must place you on at least

8    eight years of supervised release and can impose

9    supervised release in any amount over eight years.

10    Supervised release is like parole.  It begins when a

11    person is released from imprisonment.  During the term of

12    supervision, the defendant is required to live up to

13    whatever conditions the Court has set.  If the Court finds

14    after a hearing that you have violated any of the

15    conditions of supervision, then the Court can revoke your

16    supervision and place you back in prison for up to the

17    term of supervision.  So if you've been given, let's say

18    ten years of supervised release, that you can go back to

19    prison for ten years for violating the terms of

20    supervision.  Do you understand that?

21        THE DEFENDANT:  Yes, your Honor.

22        THE COURT:  And that time has to be served in

23    addition to whatever time you've already served.  The

24    Court can impose any fine from zero to $8 million, and the

25    Court must impose $100 special assessment.  Do you

11

1   understand those penalties?

2     THE DEFENDANT:  Yes, your Honor.

3     THE COURT:  Is the defendant on probation or parole

4   now to anyone's knowledge?

5     MR. MALTBIE:  Not to our knowledge, your Honor.

6     MR. VANGELDEREN:  No, your Honor.

7     THE COURT:  All right.  Mr. Ward, we next should talk

8   about the rights you have and the rights you give up by

9   pleading guilty.

10     First of all, you have the right to the assistance of

11   counsel at every stage of the case against you.  Now, the

12   Court has appointed Mr. Chamberlain to represent you

13   throughout this case.  Do you understand that?

14     THE DEFENDANT:  Yes, your Honor.

15     THE COURT:  And Mr. VanGelderen is apparently helping

16   in that regard.  This means you have the assistance of

17   counsel to fight these charges, if you want to fight

18   them.  You have the assistance of counsel to do that

19   through a trial and through an appeal.  Do you understand

20   that?

21     THE DEFENDANT:  Yes, your Honor.

22     THE COURT:  Are you completely satisfied with your

23   attorney's services in this case?

24     THE DEFENDANT:  Yes, your Honor.

25     THE COURT:  Has he done everything that you've asked

1    him to do in preparing your defense?

2         THE DEFENDANT:  Yes, your Honor.

3         THE COURT:  And have you had a full opportunity to

4    discuss with him your decision to plead guilty?

5         THE DEFENDANT:  Yes, your Honor.

6         THE COURT:  Do you feel rushed or pressured in any

7    way to make that decision?

8         THE DEFENDANT:  No, your Honor.

9         THE COURT:  The law presumes that you are innocent of

10   all charges until proven guilty.  And the government has

11   the burden of proving you guilty beyond a reasonable

12   doubt.  This is called a presumption of innocence.  It

13   protects you now and stays with you unless and until a

14   jury finds you guilty after a trial, beyond a reasonable

15   doubt.  By pleading guilty, however, you give up the

16   protection of the presumption of innocence.  Do you

17   understand that?

18        THE DEFENDANT:  Yes, your Honor.

19        THE COURT:  You have the right to persist in your not

20   guilty plea, that means to stick with it.  If you do, then

21   you'll have a trial by jury, and the jury will decide on

22   each count whether or not you're guilty.

23        At your trial, you'll have certain rights, including

24   the right to counsel at every stage of the case; the right

25   to confront and cross examine the witnesses against you

1    with counsel's help; you have the right to present a

2    defense, this includes the right to compel witnesses to

3    come to court to testify.  You'll have the right to

4    present evidence to the Court, and to testify in your own

5    defense if you want to, or the right to remain silent as

6    you desire.

7        This last right is called the right against self

8    incrimination.  This means you can't be forced to testify

9    at trial, and neither the Court nor the jury can hold it

10   against you if you exercise that right.  Do you understand

11   the rights you would have at a trial?

12       THE DEFENDANT:  Yes, your Honor.

13       THE COURT:  Now, if you plead guilty, you will give

14   up most of these rights.  By pleading guilty, you give up

15   your right to a trial; your right to confront and cross

16   examine the witnesses against you; your right to present a

17   defense and to compel witnesses to testify; and your right

18   against incrimination.  So if you plead guilty, you will

19   not have a trial of any kind, and the only further

20   proceeding in the case will be sentencing.  Do you

21   understand that?

22       THE DEFENDANT:  Yes, your Honor.

23       THE COURT:  If you plead guilty, I'm going to have to

24   ask you questions about yourself and about what you did.

25   Since your answers are being given under oath, you are

14

1    subject to a perjury prosecution if your answers turn out

2    to be false.  Do you understand that?

3        THE DEFENDANT:  Yes, your Honor.

4        THE COURT:  Do you now completely understand the

5    nature of the charge against you in Count One, the

6    enhanced penalties that you face if you plead guilty?

7        THE DEFENDANT:  Yes.

8        THE COURT:  And the rights you give up by pleading

9    guilty?

10        THE DEFENDANT:  Yes, your Honor.

11        THE COURT:  We should next talk about the process of

12    sentencing in federal court.

13        Mr. VanGelderen, have you explained to your client

14    how sentencing works in federal court?

15        MR. VANGELDEREN:  Yes, we have, your Honor.

16        THE COURT:  And Mr. Ward, did you understand what

17    your attorney has told you about how the Court goes about

18    calculating the sentence?

19        THE DEFENDANT:  Yes, your Honor.

20        THE COURT:  Now, the first step in the process is for

21    the probation officer to do an investigation and to

22    prepare a written report called a presentence report.

23    Both you and the government will have a chance to look at

24    that and to object to anything that you think is untrue or

25    unfair in the report.  Do you understand that?

15

1      THE DEFENDANT:  Yes, your Honor.

2      THE COURT:  Then on the basis of that report, the

3   Court is going to determine a guideline range.  Now, as I

4   said, at the time of sentencing, the big issue for Judge

5   Maloney will be what your sentence will be, and the

6   sentencing range that he will be dealing with is ten years

7   at the bottom and life at the top.  In deciding where in

8   that range to place your sentence, the Court will be

9   required to consider something called the guideline

10   range.  The guideline range is a suggested range for your

11   sentence calculated under the federal sentencing

12   guidelines.  It will be expressed in terms of months,

13   you'll have a high end and a low end.  And the Court is

14   required to consider the guideline range, but the Court is

15   also required to consider all of the other facts and

16   circumstances of your case.

17      After considering everything, the Court is going to

18   have discretion to impose a sentence that falls within the

19   guideline range or goes above it or below it.  So do you

20   understand the idea of the Court's discretion in deciding

21   what your sentence will be?

22      THE DEFENDANT:  Yes, your Honor.

23      THE COURT:  Now as I said before, nobody knows what

24   your sentence will be at this point.  I'm sure your

25   attorneys have gone through the guideline book with you to

16

1    give you an idea of what your sentence might be.  That's

2    what defense lawyers are supposed to do.  But at this

3    point, that is just a prediction or an educated guess, and

4    you should not be relying on it in order to make your

5    decision to plead guilty.  Do you understand that?

6        THE DEFENDANT:  Yes, your Honor.

7        THE COURT:  Has anybody promised you what your

8    sentence will be if you plead guilty?

9        THE DEFENDANT:  No, your Honor.

10        THE COURT:  All right.  Let's take a look at the plea

11    agreement then.

12        And Mr. VanGelderen, if you'll show your client this,

13    he signed on the last page.

14        MR. VANGELDEREN:  Yes, your Honor, and we have a copy

15    of a plea agreement with the signatures in the appropriate

16    spot, if the Court would like that.

17        THE COURT:  So what I have is not what you have?

18        MR. VANGELDEREN:  I have what you have, your Honor,

19    but we had him execute one and sent it over to the

20    government this morning with the signatures on the right

21    signature block.

22        THE COURT:  But other than that this is identical?

23        MR. VANGELDEREN:  Yes, your Honor.

24        THE COURT:  All right.  Mr. Ward, do you recognize

25    your signature at the end of the plea agreement?

17

1      THE DEFENDANT: Yes, your Honor.

2      THE COURT:  And did you read this and understand it

3   before you signed it?

4      THE DEFENDANT: Yes, your Honor.

5      THE COURT:  And did you review it thoroughly with

6   your counsel before you signed it?

7      THE DEFENDANT: Yes, your Honor.

8      THE COURT:  I'm not going to read it back to you word

9   for word, but I do want to make sure that you understand

10   everything in here.  And I must say that this plea

11   agreement has just about every provision imaginable in it,

12   so it's rather complex.

13      Paragraph 1 says that you wish to plead guilty or

14   that you're agreeing to plead guilty, I should say, to the

15   conspiracy charge in Count One, and to the Supplemental

16   Information which alleges that you have a prior felony

17   drug offense conviction.  And you told me you understand

18   that, correct?

19      THE DEFENDANT:  Yes, your Honor.

20      THE COURT:  Paragraph 2 sets forth the elements of

21   the offense.  We have been through that, and it also

22   explains to you what a prior felony drug offense is, and

23   we have been through that.

24      Paragraph 3 sets forth the enhanced penalties that

25   you face if you plead guilty, and you've told me you

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

18

1    understand that, including the mandatory minimum sentence

2    of ten years in prison, which is addressed in Paragraph

3    4.

4         Paragraph 5 talks about supervised release, and we

5    have been through that.

6         Now, we have not talked about the ideas in Paragraph

7    6. In Paragraph 6, you're making a promise to the

8    government.  You are telling them that you will cooperate

9    with all of the federal, state, and local law enforcement

10   agencies that are interested in working with you in their

11   efforts to investigate and prosecute crimes done by other

12   people.  You are saying here that you will give them

13   truthful information, give them truthful statements,

14   you'll come to court and testify truthfully or testify

15   truthfully before the grand jury.  You will give them

16   access to any documents within your control, and

17   essentially you'll do whatever they ask you to do within

18   reason in order to help them in investigating and

19   prosecuting other people.

20        Do you understand what you're promising to do here?

21        THE DEFENDANT:  Yes, your Honor.

22        THE COURT:  All right.  Then Paragraph 7 has a series

23   of promises by the government to you.

24        First of all, Paragraph 7A says that the government

25   will ask the Court at the time of sentencing to dismiss

19

1    any other charges now pending against you.  And certainly

2    if everything goes according to plan, that's what will

3    happen.  But what you must understand is that even though

4    the formal charge is dismissed, the conduct underlying

5    that charge does not disappear.  So that means that the

6    Court can rely on whatever conduct is alleged there, if

7    the Court finds it to be true, in order to decide what

8    your sentence should be on Count One.  Do you understand

9    that idea?

10         THE DEFENDANT:  No, your Honor.

11         THE COURT:  Okay.  Well, let me give you a

12    hypothetical situation.  Let's say I'm charged with two

13    offenses, stealing a car and bank robbery.  And in the

14    plea agreement, I agree to plead guilty to the bank

15    robbery charge, and the government is going to dismiss the

16    charge of stealing the car.  Okay.  So they dismiss the

17    stealing the car charge, but in deciding what my sentence

18    will be, the Court-- on the bank robbery charge, the Court

19    can take into consideration the fact that I stole a car in

20    connection with this robbery.  So the conduct doesn't

21    disappear, but I can't be charged separately for that--

22    for stealing that car.  Understand?

23         So that the actions don't disappear, the actions are

24    still part of what you did or didn't do, but you can't be

25    charged separately.  Understand now?

20

1    THE DEFENDANT:  Yes, your Honor.

2    THE COURT:  Okay.

3        In Paragraph 7B, the plea agreement addresses one of

4    the many decisions that the Court is going to have to make

5    at the time of sentencing.  Under the federal sentencing

6    guidelines, the Court may reduce a defendant's guideline

7    calculation by two levels and thereby possibly reduce the

8    sentence if the Court believes that the defendant has

9    accepted responsibility for what he has done.  If the

10   Court does grant the two level reduction, then the

11   government may ask the Court to grant a third level

12   reduction, total of three, for the defendant's entering of

13   a timely guilty plea.

14       Now, Paragraph 7B does not promise that any of this

15   is going to happen.  It just says that the U.S. Attorney's

16   Office will not object if the Court wants to give you the

17   first two-level reduction, and if the Court does that,

18   then the government will ask for a one more point

19   reduction for a total of three, but the Court is going to

20   decide whether or not you are entitled to these

21   reductions.  And the Court is not bound by the plea

22   agreement, and the Court is going to basically make up

23   it's own mind on all of these sentencing issues.

24   Certainly the Court is going to take into consideration

25   what is suggested here, but at the end of the day, the

21

1     Court is going to decide whether you get this two-level

2     reduction for accepting responsibility and whether you get

3     the third-level reduction.

4          So what you need to understand is if for whatever

5     reason the Court does not accept one or more of these

6     suggestions concerning your sentence, you'll still be

7     bound by the plea and you won't be allowed to withdraw it

8     for that reason.  Do you understand that?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  Paragraph 7C is an inducement to you to

11     be truthful in your statements to the government.  This

12     says that anything that you have told the government or

13     will tell the government that they didn't already know,

14     the government promises not to use against you at the time

15     of sentencing in an effort to make your sentence go

16     higher.  And this is, as I said, inducement to you to be

17     truthful with the government, because they are saying if

18     you tell them something new that they didn't know, they

19     are not going to go running to the Court with this

20     information to try to make your sentence worse.  However,

21     if you tell the Court something that contradicts what you

22     told the government, then the government reserves the

23     right to bring that up with the Court.  Do you understand

24     that?

25          THE DEFENDANT:  Yes, your Honor.

22

1          THE COURT:  Now, Paragraph 8 informs you of the

2    possibility, and I underline the word possibility, that

3    your sentence might be reduced on account of your

4    cooperation and assistance to the government.  Under

5    Section 5K1.1 of the guidelines, the Court can reduce a

6    defendant's sentence if requested by the government to do

7    so on account of the defendant's cooperation and

8    assistance with the government.  And under Rule 35(b), the

9    government can ask for this relief, even up to one year

10   after sentence has been imposed.  So a sentence that has

11   been imposed can be reduced at the request of the

12   government for cooperation.  But you need to keep several

13   things in mind here.

14          First of all, only the government can ask for this

15   particular kind of relief, and the government is not

16   promising to ask here.  They are just saying we will think

17   about it.  They will consider the extent of your

18   cooperation, and if they think that you've done enough for

19   them, they may or may not ask the Court to do something

20   for you.  That is the first thing to keep in mind.

21          Second, even if the government asks, it's up to the

22   Court to decide whether or not to reduce your sentence.

23   The Court can agree with the government or it can say no,

24   I'm not going to reduce the sentence, or it can reduce the

25   sentence in an amount greater or lesser than the

23

1    government is suggesting.

2        Third, this ten year mandatory minimum is a floor

3    below which the Court cannot go in reducing your sentence,

4    unless the government specifically asks the Court to

5    release that mandatory minimum.  So in other words, the

6    government can say we think you ought to reduce the

7    defendant's sentence, but once they say we are asking you

8    to reduce it below the mandatory minimum, then the Court

9    can't go below ten years, even if it wants to.

10       And finally, you have to keep in mind that all of

11    these decisions concerning your sentence and whether to

12    reduce it are up to the Court, not up to the government,

13    and the Court's not bound by the plea agreement, nor is it

14    bound to go along with what the government says.  So if

15    for whatever reason the Court does not reduce your

16    sentence, even if the government asks for it, you will

17    still be bound by the plea and you won't be allowed to

18    withdraw it for that reason.  Do you understand all of

19    that?

20       THE DEFENDANT:  Yes, your Honor.

21       THE COURT:  So this is nothing like a promise that

22    your sentence is going to be reduced if you cooperate with

23    the government.  And it is certainly not a promise that

24    the Court will go below the ten year mandatory minimum.

25       Understand all of that?

24

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  All right.  Paragraph 9 informs you that

3    the Court's going to be required to consider the federal

4    sentencing guidelines and the guideline range, but he is

5    not required to impose a sentence that falls within the

6    guideline range.

7          Paragraph 10 informs the Court that there is no

8    agreement here about your final sentence or any guideline

9    issue, and that means both parties are free to argue at

10   the time of sentencing for the appropriate sentence.

11         Now, Paragraph 11 is tied to the forfeiture

12   allegation that appears at the end of the Indictment.  At

13   the end of the Indictment, the government asks the Court

14   to enter an order forfeiting any right, title, or interest

15   that you might have in property that is the proceeds of

16   these illegal drug transactions or property that was used

17   to commit or facilitate the drug transactions.  And

18   specifically the government wants to forfeit $12,222 in

19   currency, a Cadillac Escalade, Pontiac Montana-- I can't

20   imagine why anyone would want a 2000 Pontiac Montana, but

21   apparently the government wants it-- and a 2002 Cadillac

22   DeVille.

23         And in Paragraph 11 says that you agree to disclose

24   to law enforcement officials the whereabouts and your

25   interest in any money, property, or other assets that is

25

1     either drug proceeds or was used to facilitate drug

2     dealing, and you agree to give up any interest, any right,

3     title, or interest that you have in these items.

4          It says specifically that you agree to forfeit all of

5     your interest in the $12,000 that I talked about and in

6     the cars that are alleged here in the forfeiture part of

7     the Superseding Indictment, and that you admit that these

8     things were the proceeds of drug dealing or facilitated

9     the commission of drug deals, and that you agree to entry

10    of an order forfeiting these things.  So do you understand

11    all of that?

12         Basically this says you're giving up the $12,000 and

13    the cars, and you're agreeing to cooperate with the

14    government to help them to understand and to forfeit any

15    other property that you might have that is joint

16    proceeds.  Understood?

17         THE DEFENDANT:  Yes, your Honor.

18         THE COURT:  Paragraph 12 goes through the

19    constitutional rights that anybody automatically gives up

20    by pleading guilty, such as the right to a trial, we have

21    been through that.

22         But Paragraph 13 addresses a couple of rights that

23    you would otherwise have even though you're pleading

24    guilty, and it says that you have agreed to limit, not

25    give up, but substantially limit these rights.  First is

26

1    the right to appeal.

2        In federal court, even though a defendant pleads

3    guilty, the defendant has the right to appeal his sentence

4    to the Court of Appeals if he believes that the sentence

5    is either illegal or unreasonable.  This says you

6    understand that you would have the right to appeal your

7    sentence, but that you're limiting it in significant

8    ways.

9        First of all, it says in essence that you're giving

10   up your right to appeal a sentence that is at or below the

11   top of a properly calculated guideline range.  So there is

12   two parts to this.  Number one, the guideline range has to

13   be correct.  The Court has to not have made any mistakes

14   in calculating the guideline range.  So if you believe the

15   Court has made a mistake in calculating the guideline

16   range, and you raised it at the time of sentencing, you

17   can appeal that.

18       Second, you can appeal if the Court gives you a

19   sentence that goes above the top of a properly calculated

20   guideline range.  So that means that you're giving up your

21   right to appeal the sentence that falls within the

22   guideline range or goes below it.  Understand all of those

23   ideas?

24       THE DEFENDANT:  Yes, your Honor.

25       THE COURT:  Mr. Ward, I'm getting the idea that you

1    don't want to do this.

2        THE DEFENDANT:  No, I want to do this, but I didn't

3    understand that part of the agreement.

4        THE COURT:  Mr. Chamberlain, was this explained to

5    your client?

6        MR. CHAMBERLAIN:  It was, your Honor, not quite in

7    the way the Court just explained it to him.  It was also

8    the subject of a modification in our discussions.  So it

9    could be that Mr. Ward is confused based upon a prior

10   explanation.

11       THE COURT:  Okay.  And I admit that I explained it a

12   little differently than it said here, because I like my

13   way better, and I think it's easier to understand.

14       MR. CHAMBERLAIN:  Actually, I do like your way

15   better, and it does explain it.  If I could just have a

16   moment with him--

17       THE COURT:  Sure, please do.

18       MR. CHAMBERLAIN:  --I could translate between the

19   two.

20       (Pause in proceedings.)

21       MR. CHAMBERLAIN:  Thank you for the Court's

22   indulgence.  I think he understands it now, your Honor.

23   It's just that this concept was explained two different

24   ways, and he didn't quite understand it.

25       THE COURT:  All right.  Mr. Ward, I think the

28

1    important thing for you to understand is that you are

2    limiting your right to appeal your sentence.  And you can

3    only appeal it on the grounds that I've set forth here,

4    the one we talked about a minute ago, and you can also

5    always appeal if you believe that the Court has based its

6    sentence on any unconstitutional factor, such as your

7    race, religion, national origin.  But other than those two

8    grounds; ground one, that the sentence is above the top of

9    a properly calculated guideline range, or number two, it

10   was based on an unconstitutional factor, you are giving up

11   your right to appeal the sentence.  Understand?

12       THE DEFENDANT:  Yes, your Honor.

13       THE COURT:  Then this paragraph goes on to address

14   something called a collateral attack.  A collateral attack

15   is a challenge to a defendant's conviction or sentence

16   that is brought after an appeal is done or after the time

17   to appeal has expired.  And again, even though you are

18   pleading guilty, you would have the right to bring a

19   collateral attack, which is generally limited to

20   constitutional issues.  This says you understand you have

21   that right, but that you're giving up your right to bring

22   a collateral attack except if you can show that your

23   waiver of this right was involuntary by showing, for

24   instance, that you did not have the effective assistance

25   of counsel in agreeing to this.  But other than that,

1     you're giving up your right to bring a collateral attack.

2     Do you understand that?

3        THE DEFENDANT:  Yes, your Honor.

4        THE COURT:  And I think the rest we have talked about

5     or is self-explanatory.

6        Understand all of the ideas in here?

7        THE DEFENDANT:  Yes, your Honor.

8        THE COURT:  Other than the promises made to you here

9     in writing, has anybody promised you anything to get you

10    to plead guilty?

11       THE DEFENDANT:  No, your Honor.

12       THE COURT:  Have your attorneys promised you

13    anything?

14       THE DEFENDANT:  No.

15       THE COURT:  Has the government officers or attorneys

16    promised you anything?

17       THE DEFENDANT:  No, your Honor.

18       THE COURT:  The plea agreement is taken under

19    advisement for review by the district judge.

20       All right.  Mr. VanGelderen, if you and your client

21    will step up to the lectern for allocution then, please.

22       Mr. Ward, it's time for me to ask you whether you

23    plead guilty or not guilty to the charge against you in

24    Count One?

25       THE DEFENDANT:  Guilty, your Honor.

30

1      THE COURT:  Next I need to make sure that you're

2   acting of your own free will, I'll have to ask you some

3   questions about yourself.

4      How old are you?

5      THE DEFENDANT:  Thirty-four.

6      THE COURT:  Where were you born?

7      THE DEFENDANT:  Chicago, Illinois.

8      THE COURT:  How far did you get in school?

9      THE DEFENDANT:  Tenth grade.

10     THE COURT:  What school was that?

11     THE DEFENDANT:  Covert High School.

12     THE COURT:  At some point your family moved to

13   Michigan?

14     THE DEFENDANT:  Yes.

15     THE COURT:  And you dropped out of school in tenth

16   grade?

17     THE DEFENDANT:  Yes.

18     THE COURT:  Did you ever go back to school?

19     THE DEFENDANT:  Yes.

20     THE COURT:  Tell me about that.

21     THE DEFENDANT:  I pursued and got a GED in Paw Paw,

22   Van Buren County, Paw Paw Public Schools.

23     THE COURT:  So you do have your GED.  Do you remember

24   what year you got that?

25     THE DEFENDANT:  I believe in '95.

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

31

1      THE COURT:  Any other schooling or training after

2   that, trade school or anything like that?

3      THE DEFENDANT:  No.

4      THE COURT:  What kind of work have you done in your

5   life?

6      THE DEFENDANT:  Mainly maintenance work, janitorial

7   work, and assembly line work.

8      THE COURT:  What is the last job you had?

9      THE DEFENDANT:  I was a roofer for Paw Paw Preferred

10   Builders.

11      THE COURT:  A roofer?

12      THE DEFENDANT:  Yes.

13      THE COURT:  When did you have that job?

14      THE DEFENDANT:  Around 2009, I think, if I'm not

15   mistaken.

16      THE COURT:  Do you have any major health problems?

17      THE DEFENDANT:  No, your Honor.

18      THE COURT:  Are you under a doctor's care for any

19   reason?

20      THE DEFENDANT:  No, your Honor.

21      THE COURT:  Do you take any prescription medications?

22      THE DEFENDANT:  No.

23      THE COURT:  Have you ever been treated for any mental

24   or psychiatric problems?

25      THE DEFENDANT:  No, your Honor.

1    THE COURT:  Do you believe that you have a drug or

2    alcohol abuse problem of any kind?

3    THE DEFENDANT:  Yes, your Honor.

4    THE COURT:  Tell me about that.

5    THE DEFENDANT:  I drink a lot of alcohol.

6    THE COURT:  How about drugs?

7    THE DEFENDANT:  No, your Honor.

8    THE COURT:  How long have you been in jail now?

9    THE DEFENDANT:  A little more than six months.

10    THE COURT:  So you haven't had any alcohol in the

11    last six months?

12    THE DEFENDANT:  No.

13    THE COURT:  Do you feel better when you are not

14    drinking or worse?

15    THE DEFENDANT:  I feel better.

16    THE COURT:  So do you believe you're in a proper

17    frame of mind to make an important decision here today?

18    THE DEFENDANT:  Yes, your Honor.

19    THE COURT:  Have you had any drugs, legal or illegal,

20    in the last two days?

21    THE DEFENDANT:  No, your Honor.

22    THE COURT:  Has anybody forced you to plead guilty?

23    THE DEFENDANT:  No, your Honor.

24    THE COURT:  Is your guilty plea the result of any

25    threats or intimidation?

33

1        THE DEFENDANT:  No, your Honor.

2        THE COURT:  Are you pleading guilty of your own free

3   will?

4        THE DEFENDANT:  Yes, your Honor.

5        THE COURT:  Now, you need to tell me in your own

6   words what you did that makes you think you're guilty of

7   this conspiracy charge.

8        THE DEFENDANT:  In about March 2010 to March 2012, I

9   lived in Kalamazoo, during the time I possessed, sell

10   cocaine more than 500 grams.

11        THE COURT:  Now, this doesn't charge you with just

12   possessing and selling cocaine, it also charges you with

13   agreeing with other people to do that.  So were there

14   other people involved with you in this cocaine business?

15        THE DEFENDANT:  Yes, your Honor.

16        THE COURT:  Who were they?

17        THE DEFENDANT:  The co-defendants from my case.

18        THE COURT:  All of them?

19        THE DEFENDANT:  Pretty much, yes.

20        THE COURT:  So tell me who is Derrick Cortez Davis?

21        THE DEFENDANT:  Someone I met before.  I'm not too

22   familiar with Derrick Davis.  I met him before.  He lives

23   in Chicago.

24        THE COURT:  So who would you-- of these people, who

25   would you say was most involved with you in selling

34

1   cocaine?

2       THE DEFENDANT:  Mario Brown, Wilson, Weathersby, and

3   a couple other people.

4       THE COURT:  Okay.  So let's take Mario Brown.  Who is

5   Mario Brown?

6       THE DEFENDANT:  A family member.

7       THE COURT:  And what was his role in this?

8       THE DEFENDANT:  Supplier.

9       THE COURT:  So at some point, you and Mr. Brown

10   talked about selling cocaine?

11       THE DEFENDANT:  Yes.

12       THE COURT:  When did that start?  When did that

13   conversation start?  In other words, whose idea was it?

14   Did he come to you?  Did you suggest it to him, what?

15       THE DEFENDANT:  I purchased from him before.

16       THE COURT:  And what was your arrangement with

17   Mr. Brown concerning purchasing cocaine?  Well, what was

18   the deal?  Okay.  Did you have a deal with him?  Was he

19   going to give you free cocaine?

20       THE DEFENDANT:  At one point in time, yes, he did.

21       THE COURT:  Free cocaine?

22       THE DEFENDANT:  Yes.

23       THE COURT:  All right.  Then at some point did you

24   start paying him for the cocaine?

25       THE DEFENDANT:  Yes, your Honor.

35

1      THE COURT:  And did you-- Did he front it to you or

2    did you have to pay him when you got the cocaine?

3      THE DEFENDANT:  It varied, sometimes I would pay him,

4    and sometimes I got fronted.

5      THE COURT:  And when did this start?  When did you

6    start buying cocaine from Mr. Brown?

7      THE DEFENDANT:  Maybe the year 2000-- '99, 2000.

8      THE COURT:  And what kind of quantities would you buy

9    from him at one time?

10      THE DEFENDANT:  It varied, half ounce, ounce.

11      THE COURT:  And did you purchase this cocaine from

12    Mr. Brown for the purpose of reselling it to other people?

13      THE DEFENDANT:  Yes, your Honor.

14      THE COURT:  And did he know that when he sold it to

15    you?

16      THE DEFENDANT:  Yes, your Honor.

17      THE COURT:  And you also mentioned Shane Lee

18    Weathersby, who is that?

19      THE DEFENDANT:  That's a friend.

20      THE COURT:  And what did he have to do with all of

21    this?

22      THE DEFENDANT:  He sold drugs.

23      THE COURT:  To you or for you or what?

24      THE DEFENDANT:  No, for his self.

25      THE COURT:  For himself?

36

1      THE DEFENDANT:  Yes.

2      THE COURT:  So did he have anything to do with your

3  operation at all?

4      THE DEFENDANT:  Besides buying drugs, that's about

5  it.

6      THE COURT:  He bought drugs from you?

7      THE DEFENDANT:  Yes.

8      THE COURT:  Okay.  So you bought drugs from Brown,

9  and Weathersby bought drugs from you?

10      THE DEFENDANT:  And Brown.

11      THE COURT:  And Brown?

12      THE DEFENDANT:  Yes.

13      THE COURT:  Now, was Weathersby buying drugs for his

14  own use or was he buying drugs from you so that he could

15  sell them to other people?

16      THE DEFENDANT:  Sell to other people.

17      THE COURT:  And did you know that when you sold the

18  drugs to Weathersby?

19      THE DEFENDANT:  Yes, your Honor.

20      THE COURT:  When did you start selling him drugs?

21      THE DEFENDANT:  I know Weathersby for a long time, so

22  I really can't actually say when I started.

23      THE COURT:  Were you selling drugs in 2010, 2011?

24      THE DEFENDANT:  2011.

25      THE COURT:  So do you think it's accurate to say that

37

1    at least 500 grams of powder cocaine went through your

2    hands?

3        THE DEFENDANT:  Yes, your Honor.

4        THE COURT:  And where were you living at the time?  I

5    think you said Kalamazoo?

6        THE DEFENDANT:  Yes.

7        THE COURT:  And were these other men also living in

8    Kalamazoo?

9        THE DEFENDANT:  No, your Honor.

10       THE COURT:  Where did Brown live?

11       THE DEFENDANT:  Chicago, Illinois.

12       THE COURT:  So he was bringing cocaine from Chicago

13   to you?

14       THE DEFENDANT:  Back and forth, yes.

15       THE COURT:  And how about Weathersby, where did he

16   live?

17       THE DEFENDANT:  Weathersby, he just moved back to

18   Michigan, so he was staying in Kalamazoo and in Covert,

19   Michigan.

20       THE COURT:  And where was he selling the drugs?

21       THE DEFENDANT:  Kalamazoo.

22       THE COURT:  Kalamazoo?

23       THE DEFENDANT:  Covert.

24       THE COURT:  All right.  The government have anything

25   to add to the factual basis?

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

1        MR. MALTBIE:  No, your Honor.

2        THE COURT:  Has Mr. Ward talked about the principal

3    people that the government understands were involved with

4    him?

5        MR. MALTBIE:  Yes, your Honor.  Mr. Brown,

6    Mr. Weathersby.  He did mention Mr. Wilson.

7        THE COURT:  He said he didn't know-- yes, he said he

8    didn't know Mr. Davis too well.

9        MR. MALTBIE:  Right.  And I understand Mr. Davis is

10   scheduled for a plea in front of this Court later today,

11   and I think that will become clear what that role was, but

12   that's true, Mr. Davis came in this late in the game.

13   Essentially what happened is all of these individuals were

14   arrested on the same-- at the same time at Mr. Ward's

15   house in the end of March of 2012.  At that time present

16   in the house was more than 500 grams of cocaine, that's

17   what the government knew at the time it brought the

18   charges.  Of course, Mr. Ward has explained more, and the

19   government is aware of what Mr. Ward has explained, and I

20   believe that it supports the factual basis for a plea to

21   this conspiracy.

22       THE COURT:  Thank you.

23       Mr. Ward, when the officers came into your house in

24   March of this year, all of these other men were there as

25   well?

39

1      THE DEFENDANT:  Yes, your Honor.

2      THE COURT:  What were they doing there?

3      THE DEFENDANT:  I was playing cards, me, Wilson,

4  Weathersby, and another guy that was on-- we was playing

5  cards, we was gambling.  Brown, Davis, and another guy,

6  Motten showed up, and Barry was there with us too while we

7  was playing cards first, and Brown was-- I mean Brown,

8  Davis, and Motten showed up.

9      THE COURT:  And there was also 500 grams of cocaine

10  in the house at that time?

11      THE DEFENDANT:  Not that I knew of.  I didn't know

12  nothing about that until after.

13      THE COURT:  Who had the drugs?  Who had brought the

14  drugs in?

15      THE DEFENDANT:  From what I noticed, I seen a bag of

16  drugs, and I seen Davis and Motten talking and conspiring

17  with each other.  So I'm not-- I didn't pay attention to

18  who actually brought them in, but I seen them.

19      THE COURT:  All right.  Mr. VanGelderen, are you

20  satisfied with the factual basis?

21      MR. VANGELDEREN:  I am, your Honor.

22      THE COURT:  Mr. Ward, after hearing everything that's

23  taken place in court today, do you still wish to plead

24  guilty?

25      THE DEFENDANT:  Yes, your Honor.

1        THE COURT:  Mr. VanGelderen, are you aware of any

2    legal reason the plea should not be accepted?

3        MR. VANGELDEREN:  I am not, your Honor.

4        THE COURT:  All right.  You can both have a seat,

5    please.

6        I find the defendant is fully capable and competent

7    to enter an informed plea, that the plea is made knowingly

8    and with full understanding of the rights I've explained.

9    That it's made voluntarily and free from any force,

10    threats, or promises, apart from the promises in the plea

11    agreement.  I find the defendant understands the nature of

12    the charge and the penalties provided by law, and the plea

13    has a sufficient basis in fact.  I'll therefore, recommend

14    to Judge Maloney that he accept the plea.

15        Mr. VanGelderen, you can get the-- if you would get

16    the presentence process started today.

17        MR. VANGELDEREN:  Yes, your Honor.

18        THE COURT:  With the probation office.

19        Anything more we need to do on this matter for now?

20        MR. MALTBIE:  No, your Honor.

21        MR. VANGELDEREN:  No, your Honor.  Thank you.

22        THE COURT:  All right.  Thank you.

23        (At 9:55 a.m., proceedings were adjourned.)

24

25

41

1

2

3

4

5                         CERTIFICATE

6

7

8          I certify that the foregoing is a transcript from the

9      Liberty Court Recording System digital recording of the

10       proceedings in the above-entitled matter, transcribed to

11        the best of my ability.

12

13

14

15                    Kathleen Sue Thomas /s/

16                    Kathleen Sue Thomas, CSR-1300

17

18

19

20

21

22

23

24

25

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050